UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DUSTIN SIERRA,<br><br>    Defendant. | CR. 19-50110-02-JLV<br><br>ORDER |

**INTRODUCTION**

  Defendant Dustin Sierra was arrested on a federal complaint on July 30, 2019. (Dockets 1 & 3). He made his initial appearance on the complaint before Magistrate Judge Daneta Wollmann on July 31. (Docket 10). The magistrate judge temporarily detained defendant at that hearing. (Docket 13). On August 14, a grand jury indicted defendant on charges of kidnapping, aggravated sexual abuse by force, interstate domestic violence, assault resulting in serious bodily injury, and assault by strangulation of a dating partner. (Docket 31). The counts of the indictment pertaining to defendant charged him with these offenses both as a principal and as an aider and abettor. Id. at pp. 1-3. The indictment separately charges co-defendant Jesse Sierra on these same offenses solely as a principal. Id. at pp. 4-5.

  Also on August 14, the magistrate judge held a detention hearing for defendant pursuant to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.* (Docket

33).  She found defendant posed a serious risk to the safety of another person or the community and ordered him detained pending trial.  (Docket 35 at p. 1). Now before the court is defendant's appeal of the magistrate judge's detention order, filed pursuant to 18 U.S.C. § 3145(b).  (Docket 36).  The government opposes the appeal.  (Docket 45).  For the reasons given below, the court denies the appeal.

I.    **Allegations**

The factual recitation given here is based on the allegations in the affidavit supporting the criminal complaint and the evidence presented before the magistrate judge at defendant's detention hearing.  The court well understands that new evidence may emerge as the case progresses.  This factual recitation is necessarily incomplete because of the early stage of the case.  It does not bind the magistrate judge or the court in any factfinding endeavors that may be undertaken in response to future motions.  As in all proceedings under the Bail Reform Act, nothing in this order is intended to "modify[] or limit[] the presumption of innocence."  18 U.S.C. § 3142(j).

On July 14, Esther Wolfe was reported missing to the Rapid City Police Department ("RCPD").  (Docket 1-1 at ¶ 3).  The reporting party stated Ms. Wolfe and co-defendant Jesse Sierra had dated and that he had assaulted Ms. Wolfe during the relationship.  Id.  Defendant and Mr. Sierra are brothers. (Docket 43 at p. 6).  The reporter last observed Ms. Wolfe on July 13 at her workplace, the Hilton Garden Inn.  (Docket 1-1 at ¶ 3).  The RCPD interviewed

33).  She found defendant posed a serious risk to the safety of another person or the community and ordered him detained pending trial.  (Docket 35 at p. 1). Now before the court is defendant's appeal of the magistrate judge's detention order, filed pursuant to 18 U.S.C. § 3145(b).  (Docket 36).  The government opposes the appeal.  (Docket 45).  For the reasons given below, the court denies the appeal.

I.    **Allegations**

The factual recitation given here is based on the allegations in the affidavit supporting the criminal complaint and the evidence presented before the magistrate judge at defendant's detention hearing.  The court well understands that new evidence may emerge as the case progresses.  This factual recitation is necessarily incomplete because of the early stage of the case.  It does not bind the magistrate judge or the court in any factfinding endeavors that may be undertaken in response to future motions.  As in all proceedings under the Bail Reform Act, nothing in this order is intended to "modify[] or limit[] the presumption of innocence."  18 U.S.C. § 3142(j).

On July 14, Esther Wolfe was reported missing to the Rapid City Police Department ("RCPD").  (Docket 1-1 at ¶ 3).  The reporting party stated Ms. Wolfe and co-defendant Jesse Sierra had dated and that he had assaulted Ms. Wolfe during the relationship.  Id.  Defendant and Mr. Sierra are brothers. (Docket 43 at p. 6).  The reporter last observed Ms. Wolfe on July 13 at her workplace, the Hilton Garden Inn.  (Docket 1-1 at ¶ 3).  The RCPD interviewed

33).  She found defendant posed a serious risk to the safety of another person or the community and ordered him detained pending trial.  (Docket 35 at p. 1). Now before the court is defendant's appeal of the magistrate judge's detention order, filed pursuant to 18 U.S.C. § 3145(b).  (Docket 36).  The government opposes the appeal.  (Docket 45).  For the reasons given below, the court denies the appeal.

I.    **Allegations**

The factual recitation given here is based on the allegations in the affidavit supporting the criminal complaint and the evidence presented before the magistrate judge at defendant's detention hearing.  The court well understands that new evidence may emerge as the case progresses.  This factual recitation is necessarily incomplete because of the early stage of the case.  It does not bind the magistrate judge or the court in any factfinding endeavors that may be undertaken in response to future motions.  As in all proceedings under the Bail Reform Act, nothing in this order is intended to "modify[] or limit[] the presumption of innocence."  18 U.S.C. § 3142(j).

On July 14, Esther Wolfe was reported missing to the Rapid City Police Department ("RCPD").  (Docket 1-1 at ¶ 3).  The reporting party stated Ms. Wolfe and co-defendant Jesse Sierra had dated and that he had assaulted Ms. Wolfe during the relationship.  Id.  Defendant and Mr. Sierra are brothers. (Docket 43 at p. 6).  The reporter last observed Ms. Wolfe on July 13 at her workplace, the Hilton Garden Inn.  (Docket 1-1 at ¶ 3).  The RCPD interviewed

friends of Ms. Wolfe.  Id. at ¶ 4.  They stated Mr. Sierra was set to be released from jail in Colorado and Ms. Wolfe was afraid of his return.  Id.

On July 17, Oglala Sioux Tribe police went to the home of defendant's father, Michael Sierra, Sr.  (Docket 42 at p. 8).  They spoke with defendant there.  Id.  Defendant stated he had not seen Mr. Sierra or Ms. Wolfe.  Id.  Also on July 17, the RCPD received a call from Ms. Wolfe.  (Docket 1-1 at ¶ 7).  She told police she was not in danger.  Id.  The call was placed from a number registered to Louella Youngman, defendant's mother.  Id.; see also Docket 8 at p. 1.  Ms. Youngman told the RCPD Mr. Sierra and Ms. Wolfe had been at her property and later went to Chadron, Nebraska.  (Docket 1-1 at ¶ 8).  On July 18, defendant's brother, Michael Sierra, Jr., told the RCPD that defendant, Mr. Sierra and Ms. Wolfe were all together but denied they had been at his house in Chadron.[1]  Id. at ¶ 10.

On July 21, Ms. Wolfe appeared at the hospital in Chadron.  Id. at ¶ 11.  She was severely bruised on her face and body—including on her neck and collarbone area—and had a broken jaw and broken ribs.  Id.  On July 22, RCPD and Bureau of Indian Affairs ("BIA") officers interviewed Ms. Wolfe.  Id. at ¶ 12.  Ms. Wolfe stated she had previously been in a dating relationship with Mr. Sierra and that he came to her workplace on July 13.  Id.  She agreed to go to the Golden Corral restaurant with him.  Id. at ¶ 13.  Golden Corral surveillance

---

[1]The affidavit states Mr. Sierra, Jr., lives in Chadron, but defendant's bail report states he lives in Crawford, Nebraska.  Compare Docket 1-1 at ¶ 10 with Docket 8 at p. 1.  The discrepancy is immaterial for purposes of this detention appeal.

3

footage shows defendant, Mr. Sierra and Ms. Wolfe in the restaurant on July 13. (Docket 43 at p. 7). Defendant's child was also with the group at the restaurant. Id.

After leaving the restaurant, they went to the 24/7 Program building.[2] Id. Mr. Sierra, Ms. Wolfe and defendant's vehicle were captured on surveillance footage at that location. Id. Defendant then drove the group to his home in Oglala, South Dakota, on the Pine Ridge Reservation. (Docket 1-1 at ¶¶ 14, 17). Ms. Wolfe did not want to go to the reservation and attempted to flee. Id. at ¶ 14. During the drive to Oglala, Mr. Sierra "repeatedly strangled [Ms.] Wolfe to unconsciousness." Id. at ¶ 15. Defendant refused to stop the vehicle or help Ms. Wolfe. Id. at ¶¶ 14-16. Defendant's child was present in the vehicle while Mr. Sierra was strangling Ms. Wolfe. (Docket 43 at p. 7).

In Oglala, Mr. Sierra repeatedly sexually and physically assaulted Ms. Wolfe.[3] (Docket 1-1 at ¶¶ 17-22). Some of the alleged assaults were torturous. Mr. Sierra tied Ms. Wolfe up inside a camper and confined her into a small space by nailing boards around her. Id. at ¶ 20. He physically and sexually assaulted her inside the camper. Id. Mr. Sierra also "dug a shallow grave and forced [Ms. Wolfe] to get into the grave" while asking her if she was ready to die.

---

[2]The 24/7 Program is an alcohol and drug testing program that is often imposed as a bond or parole condition. See Pennington Cty., S.D., Law Enforcement Division – 24-7 Program, available at https://www.pennco.org/?SEC=DAC8BEDC-B431-45AF-BA75-EC3F133379CA. (Last accessed on Sept. 19, 2019).

[3]During the detention hearing, the government indicated defendant and his father, Mr. Sierra, Sr., live on the same land in Oglala. (Docket 43 at p. 8).

Id. at ¶ 22.  Ms. Wolfe did not allege defendant directly participated in any of these assaults.  Mr. Sierra took Ms. Wolfe to an abandoned house near Ms. Youngman's residence.  Id. at ¶ 23.  On July 17, defendant picked Ms. Wolfe and Mr. Sierra up from Ms. Youngman's residence and drove them to Mr. Sierra, Jr.'s, residence in Nebraska.  Id. at ¶¶ 7, 24.  Mr. Sierra and Ms. Wolfe then went to a motel in Crawford, where Mr. Sierra repeatedly sexually assaulted her. Id. at ¶ 25.  Mr. Sierra and Mr. Sierra, Jr., later took Ms. Wolfe to the Chadron hospital.  Id. at    ¶ 26.

Defendant's bail report indicates he was charged with domestic abuse in 2014, but the charge was dismissed.  (Docket 8 at p. 4).  In 2015, defendant pled guilty to charges of unlawfully entering a building and simple assault.  Id. Defendant's wife applied for a protection order against him in 2017.  Id.  It was denied.  Id.  While defendant has been in pretrial detention, a court granted his wife a protection order.  Id.

### III. Legal Standards

"If a person is ordered detained by a magistrate judge . . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.  The motion shall be determined promptly."  18 U.S.C. § 3145(b).  A district court's review of a detention order entered by a magistrate judge "should proceed de novo."  United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc).

> To engage in a meaningful de novo review, the district court must have available the options open to the magistrate. . . . Only after determining that release upon personal recognizance or an

unsecured appearance bond will not reasonably assure appearance or will endanger the safety of others may the judicial officer then proceed to consider [conditions of release].

Id. at 1482.

"A defendant may be detained before trial '[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will reasonably assure the defendant's appearance . . . .' " United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003) (emphasis omitted) (quoting United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003)).

> In determining if release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the court considers the following: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual.

Id. (citing 18 U.S.C. § 3142(g)).

### III. Analysis

Defendant first asserts the magistrate judge "erred in finding there was a risk that [he] would not appear." (Docket 36 at p. 3). The magistrate judge made no such finding. In fact, she specifically found defendant was not a flight risk. (Dockets 35 at p. 1 & 43 at p. 16). Upon de novo review, the court agrees with the magistrate judge's finding and concludes defendant is not a flight risk.

6

Defendant also argues he "is not a danger to anyone[.]" (Docket 36 at p. 3). He points to his "unremarkable criminal history," his church attendance, habit of volunteering, devotion to his parents, and the lack of evidence that he personally assaulted Ms. Wolfe as "clear and convincing evidence" that he poses no threat. Id. at pp. 1-3. In his reply brief, defendant argues "[t]here is no evidence that [Ms. Wolfe] sustained the alleged injuries during the trip from Rapid City" to defendant's home in Oglala. (Docket 47 at p. 1). Defendant also asserts he "had nothing to do with assaulting the victim" and that he poses no danger to Ms. Wolfe. Id. at pp. 2, 4.

The government argues defendant poses a risk to Ms. Wolfe, his minor child, and the community. (Docker 45 at pp. 13-15). It asserts Mr. Sierra could not have assaulted Ms. Wolfe without defendant's assistance. Id. at p. 7. It also notes defendant's criminal history includes both charges and convictions for violent crimes. Id. at pp. 8-9. The government urges the court to conclude there is no set of bond conditions that will mitigate the danger defendant poses to his child and Ms. Wolfe. Id. at pp. 15-16.

After evaluating the Bail Reform Act factors, the court agrees with the government that no set of conditions exist that will ensure the safety of at least Ms. Wolfe if defendant is released.

### A. Nature of the offenses

The court must consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence[.]" 18 U.S.C. § 3142(g)(1). This factor weighs in favor of detention. As described above, the

offenses in this case are extremely violent.[4]  See supra Section II.  Defendant's argument he did not personally assault Ms. Wolfe is unavailing.  Defendant is charged with aiding and abetting Mr. Sierra in perpetrating the assaults. (Docket 31).  It is hornbook criminal law that an aider and abettor is punishable as a principal.  18 U.S.C. § 2; United States v. Stands, 105 F.3d 1565, 1577 (8th Cir. 1997) ("Liability for the actions of a principal requires only that the defendant was associated with the unlawful venture, participated in it as something the defendant wished to bring about, and sought by the defendant's own action to make it succeed.") (internal quotation omitted).

The government produced sufficient evidence to show defendant intentionally aided Mr. Sierra in assaulting Ms. Wolfe.  Among other things, defendant transported Mr. Sierra and Ms. Wolfe from Rapid City to Oglala and concealed them on his property.  He then took them to Nebraska—knowing Mr. Sierra had already brutally assaulted Ms. Wolfe and, presumably, seeing Ms. Wolfe's injuries from the assaults in Oglala—thereby enabling further assault. The extreme nature of the offenses and defendant's role in them weigh strongly in favor of detention.

### B. Weight of evidence

The court must consider "the weight of the evidence against" defendant. 18 U.S.C. § 3142(g)(2).  The evidence in this case does not solely consist of Ms.

---

[4]The offenses, with the possible exception of kidnapping, are also all crimes of violence, as that term is defined in federal law, because each offense "has as an element the use . . . of physical force against the person . . . of another."  18 U.S.C. § 16(a).

8

Wolfe's statements to law enforcement. Surveillance footage showed defendant, Mr. Sierra and Ms. Wolfe at the Golden Corral and Mr. Sierra and Ms. Wolfe, along with defendant's vehicle, at the 24/7 Program. Ms. Youngman and Mr. Sierra, Jr., both stated they had seen Mr. Sierra and Ms. Wolfe together. Mr. Sierra, Jr., also stated he observed defendant with Mr. Sierra and Ms. Wolfe. When Ms. Wolfe presented herself at the Chadron hospital, medical workers observed injuries consistent with her statement to law enforcement. Finally, law enforcement found physical evidence corroborating Ms. Wolfe's statement at defendant and his family's properties. (Docket 1-1 at ¶ 30). This evidence included the shallow grave and enclosure inside the camper Ms. Wolfe described. Id.

At this preliminary stage of the case, there is strong corroboration of Ms. Wolfe's statement to law enforcement incriminating defendant. This factor weighs in favor of continued detention.

### C. History and characteristics of defendant

The court must consider defendant's "history and characteristics," including his

> character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, [he] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

9

18 U.S.C. § 3142(g)(3)(A)-(B).  This factor is more equivocal than the other three, but the court concludes it also weighs in favor of detention.

Defendant's criminal history concerned the magistrate judge, who characterized it as "an escalating pattern of violence."  (Docket 43 at p. 17). The court also finds defendant's criminal history weighs in favor of detention.  It is true, as defendant points out, that his criminal history consists solely of misdemeanors.  (Docket 36 at p. 2).  However, he pled guilty to a charge of simple assault and has also been charged with domestic violence.  (Docket 8 at p. 4).  The court does not know any details of these offenses and so does not weigh defendant's criminal history heavily against him.  But it is clear this is not defendant's first violent offense.

Defendant's family ties appear to be a driving factor behind this offense. Mr. Sierra is defendant's brother.  Although neither party introduced evidence describing their relationship, it appears defendant facilitated and attempted to cover up his brother's assault at his behest.  As the government notes, defendant's parents and Mr. Sierra, Jr., also may well have known about Ms. Wolfe's captivity.  (Docket 45 at pp. 11-12).  Defendant's family ties weigh in favor of continued detention because they appear to be tied to the offenses.

Defendant asserts his good character, lack of drug and alcohol abuse, and community-mindedness weigh in favor of release.  (Docket 36 at pp. 2-3). These characteristics weigh in favor of, but do not mandate, release.  They are heavily outweighed by the other factors the court must consider.

### D. Danger to any person or community

Finally, the court must consider "the nature and seriousness of the danger to any person or the community that would be posed by [defendant's] release." 18 U.S.C. § 3142(g)(4). The magistrate judge concluded defendant's release would endanger Ms. Wolfe. (Docket 43 at p. 18). The government urges the same and also contends defendant would endanger his minor child. (Docket 45 at pp. 13-15). It notes the child was present during the initial assault on Ms. Wolfe, where Mr. Sierra repeatedly strangled her during the drive from Rapid City to Oglala. Id. at pp. 14-15. Defendant denies Ms. Wolfe was assaulted during the drive to Oglala and further denies that he poses any danger to Ms. Wolfe at all.[5] (Docket 47 at pp. 1, 4).

The court concludes defendant's release would endanger Ms. Wolfe. Defendant's role in the alleged assaults was not minimal, despite his strenuous arguments to the contrary. The possible complicity of his family members in covering up this assault raises the prospect of retribution against Ms. Wolfe or her friends and family if defendant is released. Given the crucial nature of Ms. Wolfe's testimony in this prosecution, the court is especially concerned by the possibility that defendant could attempt to intimidate Ms. Wolfe into recanting or absconding.

---

[5]The court cannot, of course, conclude with any certainty that Mr. Sierra strangled Ms. Wolfe on the drive to Oglala. But for purposes of this detention appeal, the court finds the allegation credible. Ms. Wolfe's statement to law enforcement is largely corroborated by independent and objective evidence. In addition, Ms. Wolfe presented at the Chadron hospital with bruising and injuries consistent with strangulation.

The court cannot say at this point that defendant poses a serious risk to his child. The government's argument that exposing a minor to the type of assault Mr. Sierra allegedly inflicted on Ms. Wolfe during the drive to Oglala is traumatic and dangerous is well taken. However, the government does not assert defendant exposed his child to any of the other assaults on Ms. Wolfe. Nor is there any other evidence in the record indicating defendant would otherwise endanger his child.

The danger defendant poses to Ms. Wolfe weighs in favor of continued detention. Defendant proposes the court mitigate this danger by ordering him not to contact Ms. Wolfe. (Docket 47 at p. 4). Given the extreme violence defendant allegedly facilitated against Ms. Wolfe, contrary to any rational person's understanding of the law, the court has no confidence defendant would obey a no-contact order.

**IV.   Conclusion**

The court finds the government proved by clear and convincing evidence that defendant, if released, would pose a danger to Ms. Wolfe. Each Bail Reform Act factor weighs in favor of continued detention. The court finds there is no set of conditions it could impose to mitigate this risk. On de novo review, the court concludes the magistrate judge did not err in detaining defendant on the basis of the danger he poses to Ms. Wolfe. The court affirms the magistrate judge's detention order and denies defendant's appeal.

**ORDER**

For the reasons given above, it is

ORDERED that defendant's appeal of the magistrate judge's detention order (Docket 36) is denied.

IT IS FURTHER ORDERED that the magistrate judge's detention order (Docket 35) is affirmed.

Dated October 3, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE